UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LOURDES G,
on behalf of R.E.G., a minor,

      **Plaintiff,**

v.

MARTIN O'MALLEY,
Commissioner of Social Security,

      **Defendant.**

Case No. 2:22-cv-6216
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Lourdes G. (hereinafter "Plaintiff") on behalf of R.E.G., her minor son (hereinafter "Claimant"), for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.    PROCEDURAL HISTORY**

The application for benefits, filed on March 5, 2020, alleges that Claimant has been disabled since December 2, 2019. R. 58–59, 132–38. The application was denied initially and

---

[1] Martin O'Malley, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

upon reconsideration. R. 65–67, 71–73. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 75–78. ALJ Marguerite Toland held a hearing on June 8, 2021, at which Plaintiff and Claimant, who were proceeding without the assistance of counsel, testified. R. 32–48. In a decision dated February 2, 2022, the ALJ concluded that Claimant was not disabled within the meaning of the Social Security Act from March 5, 2020, the date on which the application was filed, through the date of that decision. R. 24–28. That decision became final when the Appeals Council declined review on October 7, 2022. R. 1–6. Plaintiff timely filed this appeal, again proceeding *pro se*, pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 11, 2024, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 17.[2] On April 12, 2024, the case was reassigned to the undersigned. ECF No. 18. The matter is ripe for disposition.

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

> factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482.  Without such an articulation, the

4

Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B. Sequential Evaluation Process

The Social Security Act establishes a three-step sequential evaluation process for determining whether a child is disabled within the meaning of the statute. 20 C.F.R. § 416.924(a)−(d). The claimant has the burden of proving disability. 20 C.F.R. § 416.912(a)(1).

At step one, the ALJ determines whether the claimant is currently working and if the work performed constitutes substantial gainful activity. 20 C.F.R. § 416.924(b). If so, then the inquiry ends because the claimant is not disabled.

5

At step two, the ALJ decides whether the claimant has a severe medically determinable impairment. 20 C.F.R. § 416.924(c). If the claimant does not have a medically determinable impairment, or if the claimant's impairment is only a slight abnormality or combination of slight abnormalities that causes no more than minimal functional limitations, the inquiry ends because the claimant is not disabled. *Id*. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the claimant's impairment or combination of impairments "meet[s]," "medically equal[s]," or "functionally equal[s]" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(d). If the claimant has an impairment that meets or medically or functionally equals the requirements of a Listing, and that also meets the duration requirement, the claimant will be found to be disabled. 20 C.F.R. § 416.924(d)(1).

An impairment or combination of impairments medically equals a Listing "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.1526(a). When determining whether an impairment medically equals a Listing, the ALJ considers all the evidence in a claimant's record about the claimant's impairment and its effects on the claimant that are relevant to a finding of medical equivalence. 20 C.F.R. § 416.926(c).

If "the [claimant's] impairment does not medically meet a [L]isting, . . . the examiner must determine whether the impairment functionally equals a listing." *Jaramillo v. Comm'r of Soc. Sec.*, 130 F. App'x 557, 560 (3d Cir. 2005). A court determines whether a claimant's impairment "functionally equals" a Listing by evaluating the following six domains of functioning: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1). To functionally

6

equal a Listing, the claimant's impairment must result in "marked" limitations in two domains of functioning or result in an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). A "marked" limitation in a domain will be found when the claimant's impairment interferes seriously with the claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i).  It is a limitation that is "more than moderate" but "less than extreme." *Id*. A "marked" limitation is the equivalent of the functioning expected to be found on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. *Id*. An "extreme" limitation in a domain will be found when the claimant's impairment interferes very seriously with the claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). It is a limitation that is "more than marked" and is applied to the worst limitations. *Id*. However, an "extreme limitation" does not necessarily result in a total lack or loss of ability to function. *Id*. It is the equivalent of the functioning expected to be found on standardized testing with scores that are at least three standard deviations below the mean. *Id*.

An ALJ will use a "whole child" approach when determining whether a claimant's impairment is functionally equivalent to a Listing. SSR 09-1p. In this approach, the ALJ starts the evaluation "by considering the child's functioning without considering the domains or individual impairments." *Id*. After identifying "which of a child's activities are limited," the ALJ will then determine "which domains are involved in those activities" and "whether the child's impairment(s) could affect those domains and account for the limitations." *Id*. An impairment "may have effects in more than one domain" and the ALJ must evaluate all limitations caused by an impairment "in any affected domain(s)." *Id*. (quoting 20 C.F.R. § 416.926a(c)). Finally, the ALJ will "rate the severity of the limitations in each affected domain." *Id*. "This technique for

determining functional equivalence accounts for all of the effects of a child's impairments singly and in combination—the interactive and cumulative effects of the impairments—because it starts with a consideration of actual functioning in all settings." *Id*.

Finally, it is important to remember that Plaintiff in this case is proceeding without the assistance of counsel. Courts have a duty to liberally construe *pro se* litigants' filings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 340 (3d Cir. 2011) ("Pro se pleadings are often submitted by individuals with limited skills and technical expertise in the law."). Despite this liberal construction, however, "unrepresented litigants are not relieved from the rules of procedure and the requirements of substantive law." *Parkell v. Danberg*, 833 F.3d 313, 324 n.6 (3d Cir. 2016) (citations omitted); *see also Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (stating that *pro se* litigants "must abide by the same rules that apply to all other litigants") (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)). "While a court must construe a pro se litigant's pleadings liberally, it need not act as his advocate." *United States v. Peppers*, 482 F. App'x 702, 704 (3d Cir. 2012).

### III. ALJ DECISION AND APPELLATE ISSUES

Plaintiff alleges that Claimant has been disabled since his birth on December 2, 2019. R. 132. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since March 5, 2020, the date on which the application was filed. R. 25.

At step two, the ALJ found that Claimant has the following medically determinable impairments: Grade I-II/VI heart murmur; sickle cell trait; a history of pyloric stenosis; and status post pyloromyotomy surgery. *Id*. However, the ALJ went on to find that these medically determinable impairments cause no more than minimal functional limitations. R. 25–28. In making this finding, the ALJ expressly also found that Claimant had no limitation in each of the six functional domains: *i.e*., acquiring and using information; attending and completing tasks;

interacting and relating with others; moving about and manipulating objects; caring for yourself and health; and physical well-being. R. 26. Based on this analysis, the ALJ concluded that Claimant has not been disabled within the meaning of the Social Security Act since March 5, 2020, the date on which the application was filed. R. 28.

Plaintiff apparently disagrees with the ALJ's findings at step two and believes that the ALJ erred in failing to reach step three to find that Claimant's impairments meet, or medically equal, a listed impairment. Plaintiff appears to ask that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. ECF Nos. 8, 11, 12, 14, 16, 19. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 9.

**IV.     DISCUSSION**

Construed liberally, *see Erickson*, at 551 U.S. 94; *Higgs*, 655 F.3d at 340, Plaintiff's *pro se* filings appear to argue, *inter alia*, that the ALJ failed to fully and fairly develop the record. ECF No. 8 at 1; *see also* R. 213. According to Plaintiff, the ALJ's failure to obtain Claimant's more recent medical records reflecting Claimant's developmental delays and autism screenings, and the ALJ's failure to have Claimant evaluated for autism as promised by the ALJ, resulted in harmful error. *Id*.; ECF No. 11. This Court agrees.

"An ALJ owes a duty to a *pro se* claimant to help him or her develop the administrative record. 'When a claimant appears at a hearing without counsel, the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" *Reefer v. Barnhart*,

9

326 F.3d 376, 380 (3d Cir. 2003) (quoting *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985)) (cleaned up); *see also Turby v. Barnhart*, 54 F. App'x 118, 122 (3d Cir. 2002) (noting that the ALJ's "duty [to develop the record] is most acute where the claimant is unrepresented"); *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (observing that, "when the claimant is unrepresented[,]" there exists a "heightened level of care and the responsibility of the ALJ to assume a more active role"); *cf. Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir.1995) ("ALJs have a duty to develop a full and fair record in social security cases."). However, "[t]he fact that a claimant is unrepresented by counsel and has knowingly waived this right[3] is not alone sufficient for remand." *Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980) (citations omitted). Where a claimant "knowingly and intelligently waived her right to representation, the burden lies with her to show that the ALJ did not adequately develop the record under her heightened duty to 'scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts.'" *Whetstone o/b/o U.W. v. Berryhill*, No. CV 16-8602, 2017 WL 5047899, at *3 (D.N.J. Nov. 2, 2017) (quoting *Vivaritas v. Comm'r of Soc. Sec.,* 264 F. App'x 155, 157–58) (3d Cir. 2008)(cleaned up); *Sudler v. Berryhill*, No. 15-729, 2017 WL 1197676, at *10 (D. Del. Mar. 30, 2017) ("ALJs have a duty to develop a full and fair record in social security cases. Accordingly, an *ALJ must secure relevant information regarding a claimant's entitlement to social security benefits. This is so even though the claimant bears the burden to prove his disability*.") (citations omitted) (emphasis added).

---

[3] In this case, Plaintiff received notice of her right to representation. R. 35, 187. The portion of the hearing transcript when Plaintiff responded to questions about the right to representation is marked "[INAUDIBLE][.]" R. 34. However, the ALJ represents in her written decision that "[a]lthough informed of the claimant's right to representation, they chose to appear and testify without the assistance of an attorney or other representation." R. 24.

The Court of Appeals for the Third Circuit does "not prescribe any particular procedures that an ALJ must follow" when considering a *pro se* plaintiff's claim for benefits. *Reefer*, 326 F.3d at 380 (finding the ALJ had a duty to investigate further when he found that the medical records before him did not refer to the claimant's stroke and holding that the ALJ "could have requested additional medical records or held another hearing to receive testimony from [the claimant's] treating physicians about the stroke"); *see also id.* (citing *Miranda v. Sec'y of Health, Educ. & Welfare*, 514 F.2d 996, 998 (1st Cir. 1975) (finding that an ALJ's investigation must be "not wholly inadequate under the circumstances"); *Dobrowolsky*, 606 F.2d at 407–08 (finding, *inter alia*, that "it may be that, with properly developed evidence, [the claimant] comes within one of the per se qualifications for disability under the regulations" and that, in light of certain medical records and hearing testimony, "[a]rguably, *the ALJ should have pursued this possibility by calling for additional evidence*, and if counsel had represented Dobrowolsky this possibility undoubtedly would have been pursued") (emphasis added); *Verbanac v. Kijakazi*, No. CV 20-1506, 2022 WL 395246, at *3–4 (W.D. Pa. Feb. 9, 2022) ("More evidence was needed in this matter to determine the extent of Plaintiff's limitations.") (citations omitted). The adequacy of an ALJ's development of the record in light of this "heightened level of care[,]" *Dobrowolsky*, 606 F.2d at 407, is decided on a case-by-case basis. *Reefer*, 326 F.3d at 380 (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1052 (6th Cir. 1983)); *see also Howard v. Kijakazi*, No. 20-CV-04412, 2021 WL 4893347, at *8 (E.D. Pa. Oct. 20, 2021) ("The adequacy of the ALJ's development of the record varies case-by-case and depends upon the circumstances of the case.") (citing *Reefer*, 326 F.3d at 380) (cleaned up).

During the administrative hearing before the ALJ, Plaintiff testified that Claimant's pediatrician "told me it's possible he's [Claimant] autistic because he's showing signs of—he's

11

the same doctor, and I was prepared [INAUDIBLE].[4] We were there once or twice." R. 40; *see also* R. 36 (reflecting that Claimant was about 18 months old at the time of the hearing). The ALJ questioned Plaintiff regarding Claimant's functioning, as follows:

> Q: I am going to ask you some questions about his functioning. Is he walking yet?
>
> A: Yes. He's walking, but he's walking on his tippy toes.
>
> Q: And has he started to say any words yet?
>
> A: No. That's where the issue popped. He does like humming sound. He does a hmm. I think he's trying to say mama, but he says ma'am, like ma'am, sir.
>
> Q: Does he say no?
>
> A: Nope. He doesn't.
>
> Q: *Does he get startled by loud noises?*
>
> A: *Yes. That's another thing. I have to turn the volume down on the TV or he'll like jump.*
>
> Q: Okay. *Sometimes, with autistic children they get like really freaked out at loud noises*.
>
> A: My other son does - - my nine-year-old.
>
> Q: Is he still on the bottle, Ms. G[.]?
>
> A: Yes, he's still on the bottle because he's not eating so well. I try my best. I try to feed him. He doesn't let me feed him at all, so what I do is [INAUDIBLE] and I'll put in his chair, on the tray, and I'll put it there and he'll like feed himself, but he'll flip the food around. Like around. He'll flip it around and throw it and he'll [verb missing] it. He does it with the bottle, too. He'll put it and then he'll drink the milk. He flips and then he eats it.
>
> Q: So, he can drink from a cup, but he prefers the bottle?
>
> A: Yes, he can drink from a cup. Yes.

---

[4] Multiple portions of the hearing transcript are marked "INAUDIBLE," making it difficult at times to understand the hearing testimony.

Q: How about – *can he follow simple directions such as put the toy on the table or bring the toy to me?*

A: *No, he doesn't listen to me at all. That's another thing. I try to call on* [Claimant]. *That's where I have him most of the day. He doesn't listen at all. He doesn't even respond to his name. I'm like* [Claimant's name]. *He doesn't even look at me.* I'm like what is this?

Q: Have you had his hearing checked?

A: Yes, I've had his hearing checked. Yes.

Q: What kind of toys does he like to play with. Does he like to look at books or play with a ball or play with stuffed animals.

A: Yes. He plays with stuffed animals, balls [INAUDIBLE]. I'm Puerto Rican. So, I think he understands caca [phonetic]. But then, he'll go back to it.

Q: Okay. Is he able to point to something he wants like an apple or something, or a banana, and say I want that, not say that, but can he let you know that he wants it with his hands?

A: Not yet. The one thing that I do see if he's walking by, he'll put his hands out so that I can pick him up. But if he wants something. No. Not yet. [INAUDIBLE]. He's developing.

Q: Does he sleep well at night?

A: At times. At times. It depends if he doesn't it depends on the naps in the day. If he takes more naps during the day, sometimes, one, sometimes, two, he'll be up at night.

Q: Have you tried to get him on a schedule where he goes to bed at the same time each night.

A: I tried it, and we were on track, then we got off track again. Like today. I usually give him a bath and then feed him and then, [INAUDIBLE]. But sometimes, it doesn't work out that way, but I try. [INAUDIBLE] so I can sleep at night.

Q: Okay. How does [Claimant] get along with his siblings?

A: I mean, it's almost like [INAUDIBLE]. I have to take him outside to the hospital. [INAUDIBLE] another vaccine and the following day I had to rush him to the hospital again because he was just lying on the bed like staring wide-eyed. I'm like what happened. What's going on. Why he's not moving?

13

R. 41–43 (emphasis added).

Although the beginning of the next exchange between Plaintiff and the ALJ was largely inaudible, later in the exchange the ALJ expressly advised Plaintiff that the ALJ would contact Claimant's pediatrician to obtain updated records, would try to schedule an autism evaluation for Claimant, and would obtain "all the records' before making a decision:

> Q: Did you [INAUDIBLE]?
>
> A: [INAUDIBLE].
>
> Q: [INAUDIBLE]. I have records [INAUDIBLE] children program. That's where he [INAUDIBLE]. I only have up to 20. So, *what I'm going to do is write Dr. Sayvon. I'll write him a letter [INAUDIBLE] and the autism and I will ask him to update the records. We have your verbal permission to do that, correct?*
>
> A: *Yes. Yes.* And, again, I can also round up [INAUDIBLE], because sometimes, you call the clinic, they don't even pick up the phone.
>
> Q: Right. Okay. *We'll try to get those records. <u>Don't you worry about it. If we don't get them, we'll send them a subpoena.</u>*
>
> A: Okay. Okay. Okay.
>
> Q: <u>*I don't want you to be worried about getting the records because we will do that for you*</u>. Anything else you want to tell me about [Claimant] before we close?
>
> A: Let's see. Hold on.
>
> Q: I'm not sure if they – I'm not sure about – *they, sometimes need to [INAUDIBLE] two or three before that can be diagnosed because they have to look at areas of functioning. Isn't always going to exhibit - - <u>but I will see if we can send him to a doctor that specializes in the autism and see if he's old enough to be evaluated.</u>* Okay?
>
> A: I really would appreciate that. Yeah, again [INAUDIBLE] as well. I'm not too sure but [INAUDIBLE] happening to him, you know. It's just, you know [INAUDIBLE] you know [INAUDIBLE].

R. 44–45 (emphasis added); *see also* R. 46 ("[W]e're going to get started on getting these records.").

> Q: Okay. All right. So, what if we need anything we will reach you probably by email so make sure you check your spam folder and everything. *We're going to get started on getting these updated records. I'll find out if I can [INAUDIBLE] for an autism evaluation.* That will be paid for by us. And then, *once we get all the records in, I'll make a decision*.

R. 47 (emphasis added).

However, despite the ALJ's multiple assurances and representations to the *pro se* Plaintiff at the hearing in June 2021 (when Claimant was approximately 18 months old), no updated medical records were added to the administrative record; the only medical records that appear in the record are dated December 2, 2019, to June 17, 2020, *i.e.* from the time of Claimant's birth until the time when he was approximately six months old. *See* R. 219–354. Moreover, the record offers no explanation for the ALJ's failure to obtain updated medical records and to secure an autism evaluation of the Claimant, nor does the ALJ's decision even refer to the promises made to the Plaintiff at the administrative hearing. *See* R. 45, 47; *see also* ECF No. 8 at 1 (reflecting Plaintiff's description of Claimant's developmental delays and issues and asking, "Why did the previous judge promise [that Claimant would] be evaluated by a doctor but then disregard [Claimant] and just deny him benefits anyway?"); *see also* R. 213 ("The judge that held an online video hearing on June 8 2021 said she would have my son [Claimant] evaluated by a social security doctor. I have waited for an appointment and nothing."). In short, this record unequivocally establishes that the ALJ wholly failed in her duty to develop the administrative record of this *pro se* Plaintiff. *See Reefer*, 326 F.3d at 380; *Turby*, 54 F. App'x at 122; *Ventura*, 55 F.3d at 902.

Compounding these failures, the ALJ misstated or misrepresented the evidence that actually appears in the record. For example, when summarizing Plaintiff's hearing testimony, the ALJ stated that Plaintiff testified that Claimant "can follow simple directions." R. 26. However,

as noted above, the record clearly belies this statement. R. 42 ("Q: *How about – can he follow simple directions such as put the toy on the table or bring the toy to me?* A: *No, he doesn't listen to me at all. That's another thing. I try to call on* [Claimant]. . . . *He doesn't listen at all. He doesn't even respond to his name. I'm like* [Claimant's name]. *He doesn't even look at me.*"). The ALJ stated that "[r]ecords showed . . . developmental assessments during that period show normal development[,]" R. 28, but Plaintiff testified that Claimant exhibited developmental delays and/or abnormalities and that Claimant's pediatrician had referred to the possibility of autism. R. 40–43.[5]

Based on this record, the Court cannot conclude that the ALJ's failure to develop the record is harmless or that substantial evidence supports the ALJ's decision to deny this claim at step two because Claimant "did not have an impairment or combination of impairments that significantly limits his or her ability to perform age-appropriate activities." R. 28; *see also Dobrowolsky*, 606 F.2d at 407–08 (finding, *inter alia*, that "it may be that, with properly developed evidence, [the claimant] comes within one of the per se qualifications for disability under the regulations" and that, in light of certain medical records and hearing testimony, "[a]rguably, *the ALJ should have pursued this possibility by calling for additional evidence*, and if counsel had represented Dobrowolsky this possibility undoubtedly would have been pursued") (emphasis added); *cf. Murphy v. Comm'r of Soc. Sec.*, No. 1:19-CV-20122, 2020 WL 7022746, at *6 (D.N.J. Nov. 30, 2020) ("The ALJ's reliance on this misconception, along with other unsupported

---

[5] Notably, records from Claimant's pediatrician, Elvira Rubia-Sazon, M.D., and later filed with the Court by Plaintiff, ECF No. 12, support Plaintiff's testimony in this regard. *See, e.g.*, ECF No. 12, pp. 21–25 (containing Claimant's 18-month well-child visit on June 10, 2021, and reflecting, *inter alia*, that Plaintiff had failed the Modified Checklist for Autism in Toddlers ("MCHAT"); had failed the Ages and Stages Questionnaire ("ASQ"); and had been referred to an Early Intervention Program ("EIP")), 26–30 (containing Claimant's 15-month well-child visit on March 11, 2021, and reflecting, *inter alia*, that Claimant had failed the MCHAT and ASQ and had been referred to a children's hospital for a development evaluation).

mischaracterizations of Plaintiff's physical abilities . . . permeates the ALJ's decision. As stated above, these errors cannot be separated from the ALJ's analysis of other record evidence such that the Court may determine whether substantial evidence supports the ALJ's RFC analysis."); *Coniglio v. Colvin*, No. CV 15-40, 2016 WL 4385870, at *9 (E.D. Pa. July 26, 2016), *report and recommendation adopted*, No. CV 15-40, 2016 WL 4270334 (E.D. Pa. Aug. 15, 2016) ("However, an analysis based on factual errors and mischaracterizations of the evidence cannot provide substantial evidence to find that a claimant's complaints of pain are not credible.").

This Court therefore concludes that remand of the matter for further development of the administrative record, examination of new evidence, and further consideration of Claimant's impairments and possible diagnosis of autism is warranted. Moreover, remand is appropriate even if, upon further development of the record and consideration of these issues, the ALJ again concludes that Claimant is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation.").

V.   **CONCLUSION**

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

Moreover, this *Opinion and Order* resolves Plaintiff's pending motion for benefits, ECF No. 19. The Clerk is therefore **DIRECTED** to remove this motion from the Court's pending motions list.

The Court will issue a separate order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).


Date:  July 3, 2024                                              *s/Norah McCann King*
                                                                      NORAH McCANN KING
                                                            UNITED STATES MAGISTRATE JUDGE